UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RODOLFO MCCANDLESS FALCON, IV            PETITIONER

V.            CIVIL ACTION NO. 3:21-CV-376-KHJ-ASH

COMMISSIONER BURL CAIN            RESPONDENT

REPORT AND RECOMMENDATION

Petitioner Rodolfo McCandless Falcon, IV, filed this 28 U.S.C. § 2254 petition for habeas corpus relief challenging his state-court conviction for sale of methamphetamine and conspiracy to sell methamphetamine. Pet. [1, 4]. Respondent Commissioner Burl Cain filed a response [19] in opposition to the petition. As explained below, the undersigned recommends that the petition be denied and this matter dismissed with prejudice.

**I.  Facts and Procedural History**

The Mississippi Court of Appeals provided a succinct summary of the background of Falcon's charges leading to the conviction and sentence at issue in this habeas petition:

> On September 21, 2017, Investigator Greg Jones and other members of the Pearl Police Department arrested Jason Baker and his son, Brandon Sumrall, on charges related to the possession and sale of controlled substances. At the jail, Baker approached Jones and offered "to make a buy" from Baker's friend Rudy Falcon in exchange for leniency for him and his son. In Jones's presence, Baker contacted Falcon via Facebook Messenger, and Falcon responded immediately. Their conversation was as follows:
>
> Baker:  Hey bro can I holla at u need a ball.[1]
>
> Falcon:  Where you been
>
> Baker:  Ive been at work wht u mean where i been
>
> Falcon:  I aint heard from you in a few days

---

[1] Baker testified at trial that a ball is a reference to a quantity of methamphetamine. Court of Appeals R. Vol. 2 [20-5] at 116.

> Baker:  Been busy fool
>
> Baker:  So whts up is it cool to swing by
>
> Falcon:  Come by and check out my new speakers
>
> Baker:  Wht kind u gt bro
>
> Falcon:  Powerbass
>
> Baker:  Nev heard of it is it worth a shit
>
> Falcon:  Hell yea
>
> Baker:  Thts whts up ill b there shortly[2]

> After the Facebook exchange, Jones searched Baker, gave him $120 and a watch equipped with a video camera, and drove him to Falcon's house. They arrived at Falcon's house within about twenty minutes of the Facebook conversation. Baker knocked on the door, and a man name Mark answered and let him in. Falcon was sitting down inside. A woman named Tammy was also present.
>
> In the video taken by Baker's watch, which was admitted into evidence, Baker asks Falcon about the speakers Falcon "wanted him to look at." Falcon's response is inaudible. Baker testified that Falcon showed him the speakers, though the video does not show it. Baker also testified that Falcon poured methamphetamine onto a digital scale, measured an eight-ball, and sold it to him for $120. The video does not depict an actual hand-to-hand transfer, and there is no discussion about drugs. Baker testified that the video shows Falcon pouring methamphetamine from a bag and holding a digital scale, but the video is less than clear. Baker left Falcon's house about three minutes after he arrived and walked straight back to Jones's car. Baker had a clear plastic bag containing approximately 3.44 grams of methamphetamine, i.e., an eight-ball.

311 So. 3d at 1187–88 (transcript of Facebook messages unaltered) (footnotes omitted).

Falcon was indicted on two drug charges and on December 4, 2018, a Rankin County jury convicted him on both counts. On December 10, 2018, the circuit court sentenced him as a subsequent drug offender and a non-violent habitual offender to a thirty-year total term of incarceration. Court of Appeals R. Vol. 1 [20-4] at 89–92 (Judgment). Through counsel, Falcon appealed his conviction and sentence, raising one issue for review: "Whether the trial court erred

---

[2] *See also* Court of Appeals R., Exhibits [20-3] at 3–7 (screenshots of Facebook messages).

in admitting improperly authenticated Facebook messages." Appellant's Brief [20-2] at 5. The Mississippi Court of Appeals affirmed Falcon's conviction and sentence in an August 18, 2020 written opinion. *See Falcon v. State*, 311 So. 3d 1186 (Miss. Ct. App.), *cert. denied*, 336 So. 3d 651 (Miss. 2020).

Falcon then filed an application to file a motion for post-conviction relief (PCR motion) with the Mississippi Supreme Court. That application asserted the following issue: "There exists evidence of material fact, not previously presented and heard[,] that requires vacation of the conviction and sentence to prevent a miscarriage of justice from [e]nsuing." PCR File [20-8] at 7. After receiving a response from the State, the Mississippi Supreme Court denied Falcon's application on March 21, 2022:

> Falcon submits that he has newly[]discovered evidence that likely would have changed the outcome of his trial, and in support of his claim, he provides an affidavit from someone who was present and involved with the drug purchase. However, the State counters that the evidence Falcon offers is not actually newly[]discovered evidence, and even if it was, it was not evidence that would have affected the outcome of the trial. After due consideration, the panel finds the application should be denied.

Miss. Supreme Ct. Order [19-2] at 1.

Falcon filed this habeas petition in June 2021.[3] It raises two grounds for relief:

> Ground One: The trial court erred in admitting improperly authenticated Facebook messages[.]

> Ground Two: There exists evidence of material fact not previously presented and heard that requires vacation of the convictions and sentences to prevent a miscarriage of justice from [e]nsuing.

Pet. [4] at 5, 9.

---

[3] At the time he filed his petition, Falcon had not exhausted Ground Two of his petition. Respondent moved to dismiss Falcon's mixed petition. While that motion was pending, the Mississippi Supreme Court denied Falcon's request for post-conviction review on Ground Two. That mooted Respondent's motion. *See* Report & Recommendation [16]; Order Adopting Report & Recommendation [17].

**II.     Analysis**

"A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Engle v. Isaac*, 456 U.S. 107, 119 (1982) (quoting 28 U.S.C. § 2254(a)). Where, as here, the grounds raised in a § 2254 petition were rejected on the merits in state court, the petition may be granted only if

> the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Because Falcon's claims involve mixed questions of law and fact, "subsection (d)(1) governs this court's review." *Morris v. Cain*, 186 F.3d 581, 584 (5th Cir. 1999).

> The Supreme Court
>
> ha[s] explained that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established law erroneously or incorrectly." *Id.* at 411. Rather, that application must be "objectively unreasonable." *Id.* at 409. This distinction creates "a substantially higher threshold" for obtaining relief than *de novo* review. *Schiro v. Landrigan*, 550 U.S. 465, 473 (2007). [Section 2254 of the] AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visicotti*, 537 U.S. 19, 24 (2002) (per curiam).

*Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations cleaned up). Thus, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). So "even

4

a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. As the Supreme Court has observed, "[i]f this standard is difficult to meet, that is because it was meant to be." *Id.* With these standards in mind, the Court turns to Falcon's arguments.

***Ground One.*** Falcon says "[t]he trial court erred in admitting improperly authenticated Facebook messages." Pet. [4] at 6. In particular, he says "[t]he prosecution failed to offer any evidence to authenticate the "Rudy [Falcon]" account belonged to and was controlled by the petitioner . . . when Jason Baker sent a message . . . requesting to buy a 'ball.'" *Id.* Falcon raised this issue on direct appeal, and the Mississippi Court of Appeals rejected his argument. *Falcon*, 311 So. 3d at 1189 (finding no abuse of discretion in court's admission of Facebook messages). The Mississippi Supreme Court denied Falcon's petition for certiorari. *Falcon*, 336 So. 3d 651.

"A state court's evidentiary rulings present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999). Falcon says the allegedly incorrect evidentiary ruling violated his "right to due process." Pet. [4] at 7. But the Supreme Court "ha[s] long recognized that a 'mere error of state law' is not a denial of due process" because, "[i]f the contrary were true, then 'every erroneous decision by a state court on state law would [raise] a federal constitutional question.'" *Engle*, 456 U.S. at 121 n.21 (quoting *Gryger v. Burke*, 334 U.S. 728, 731 (1948)). This limits the Court's role to determining whether the trial court's alleged error—here, ruling the Facebook messages were admissible—"render[ed Falcon's] trial fundamentally unfair." *Johnson*, 176 F.3d at 820; *see Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998) (explaining the error must be "'so extreme that it constituted a denial of fundamental fairness' under the Due Process Clause." (citation omitted)).

5

Mindful of the limitations on the Court's review of Falcon's habeas petition, state law nonetheless provides a convenient starting point in the analysis.

> Mississippi Rule of Evidence 901 governs the requirements of authentication of evidence, stating that the authentication requirement "is satisfied by evidence sufficient to support ta finding that the matter in question is what its proponent claims." Authentication is a condition precedent to admissibility. A party must make a prima facie showing of authenticity, and then the evidence goes to the jury, which ultimately will determine the evidence's authenticity.

*Smith v. State*, 136 So. 3d 424, 432 (Miss. 2014) (quoting Miss. R. Evid. 901(a)) (additional citation omitted). With respect to Facebook messages, the Mississippi Supreme Court has explained that "a prima facie case of authentication" may be established by showing that "the purported sender respond[ed] to an exchange in such a way as to indicate circumstantially that he was in fact the author of the communication." *Id.* at 433. The Mississippi Court of Appeals found the following "sufficient evidence for the jury to find that Falcon sent the messages":

> [I]n Jones's presence, Baker exchanged Facebook messages with a "Rudy Falcon," whose profile picture appears to be a picture of Falcon. Baker testified that he regularly communicated with Falcon in this manner. In the subject exchange, Baker stated that he needed to see Falcon because he "need[ed] a ball," i.e., an eight-ball of methamphetamine. Falcon did not respond directly to Baker's request for "a ball" but invited Baker over to see his new speakers. Baker testified that when he arrived at Falcon's house about twenty minutes later, Falcon sold him an eight-ball—promptly and without further discussion—and showed him some new speakers. In other words, Falcon responded to Baker's arrival "in such a way as to indicate circumstantially that he was in fact the" same person who had exchanged Facebook messages with Baker just twenty minutes earlier.

*Falcon*, 311 So. 3d at 1189 (quoting *Smith*, 136 So. 3d at 433).

The Court agrees with the Mississippi Court of Appeals that the Facebook messages were properly authenticated under Mississippi Rule of Evidence 901 and were admissible. But even if the messages themselves were improperly admitted in evidence at trial, any error did not render Falcon's trial fundamentally unfair in light of Baker's testimony that Falcon sold him methamphetamine. *See* Court of Appeals R. Vol. 2 [20-5] at 121 ("I got out and went and talked

6

to Rudy for a minute. He was sitting in his chair. And [the video] shows him pouring up the methamphetamine in a baggie. Then he puts it on the scale, and we do the transaction."); *id.* at 122 (Baker's testimony that he got the "8-ball of meth" from "Rudy Falcon"). Falcon has not shown an error so extreme that it constituted a denial of fundamental fairness. Falcon is not entitled to habeas relief on Ground One.

**Ground Two.** Falcon argues newly discovered evidence requires his conviction and sentence be set aside. Specifically, he attaches to his Petition the May 22, 2021 Affidavit of Marc Ash. Ash says he was the one who responded to Baker's Facebook messages to Falcon on September 21, 2017. Ash also says he was present at Falcon's house when Baker came over that evening and "[a]t no time did [Falcon] sell or bag up any methamphetamine to sell to [Baker.]" Ash Aff. [1-1]. Falcon, who "has maintained his innocence," thus says he should "be granted a new trial for a jury to hear and consider . . . Ash's testimony." Pet. [4] at 10, 11. Falcon raised this claim—and provided the Ash affidavit—on post-conviction review, and the Mississippi Supreme Court rejected it. Miss. Supreme Ct. Order [19-2].

"Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). On the contrary, "a claim of actual innocence is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Id.* at 404. It does not state an "independent, substantive constitutional claim," necessary for warranting habeas relief. *Id.* Falcon is not pursuing an "otherwise barred" claim and does not allege "an independent constitutional violation" that occurred at trial. *Id.* at 404, 400. Accordingly, he is not entitled to habeas relief on this claim.

7

**III.   Conclusion**

The Court has considered all arguments. Those not addressed would not have changed the outcome. For these reasons, Falcon has not shown the state-court decisions addressing the arguments he now makes were contrary to or involved an unreasonable application of clearly established federal law or were based on an unreasonable determination of the facts in light of the evidence. The undersigned therefore recommends that Falcon's petition be denied and this matter dismissed with prejudice.

The parties are hereby notified that a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within 14 days after being served with a copy[4] shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

Respectfully submitted, this the 29th of April, 2024.

s/ *Andrew S. Harris*
UNITED STATES MAGISTRATE JUDGE

---

[4] If a document is served by mail, the party is considered to have been served on the date the document is mailed by the Court. *See* Fed. R. Civ. P. 5(b)(2)(C).